UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWARD J. BORACCHIA, et.al., | NO.  C-07-0650 MMC |
| Plaintiffs, | |
| -vs- | ORDER |
| BIOMET, INC., | |
| Defendant. | |

A telephonic hearing was held on the Defendant's Motion for Summary Judgment, or in the *Alternative for Summary Adjudication of Claims* (Ct. Rec. 26), on February 19, 2008. Barbara H. Kramer and Mitchell A. Kramer participated on behalf of the Plaintiffs; Tory E. Griffin participated on behalf of the Defendant. The Court took the matter under advisement.

The Court has reviewed the file, the Motion and the briefing on the Motion, and considered the arguments of counsel. For the reasons stated below Defendant's Motion for Summary Judgment is granted.

**I. BACKGROUND**

Plaintiffs Edward J. Boracchia and Boracchia & Associates filed a complaint against Biomet, Inc., (hereinafter "Biomet") on January 31, 2007, asserting three claims: 1) breach of contract, 2) violation of the California Independent Wholesale Representatives Contractual Relations Act of 1990 (Cal. Civil Code, § 1738.10, *et. seq*.), and 3) statutory unfair competition under the California Business and Professions Code § 17200, *et. seq.*. The claims in this diversity case arise out of a 28 year relationship between Plaintiffs and Biomet that was

ORDER - 1

originally memorialized in a Distributorship Agreement dated February 28, 1979. Plaintiffs were the distributors in a designated territory of Biomet's orthopedic implant devices and related surgical supplies.

Biomet brought a Motion for Summary Judgment on all of the claims asserting that all are barred by the statute of limitations and additionally that Plaintiffs are not entitled to protection under the California Independent Wholesale Representatives Contractual Relations Act of 1990 (hereinafter "CIWRCRA") . Plaintiffs oppose the Motion asserting that either they are entitled to judgment or that there are material questions of fact that preclude summary judgment for the Defendants.

## II. DISCUSSION

<u>Standard Applicable to the Motion.</u>  A party is entitled to summary judgment where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The party seeking summary judgment must show that no genuine issue of material fact exists and that he is entitled to judgment as a matter of law by "pointing out" to the Court that there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth." *S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1306 (9th Cir. 1982). The court must construe all facts in favor of the non-moving party and all justifiable inferences are also to be drawn in his/her favor. *Anderson*, 477 U.S. at 255.

The party opposing summary judgment must go beyond the pleadings to designate specific facts establishing a genuine issue for trial. *Celotex*, 477 U.S. at 324; *Marks v. United States*, 578 F.2d 261, 263 (9th Cir. 1978) (genuine issues are not raised by mere conclusory allegations). The non-moving party may do this by use of affidavits (including his own), depositions, answers to interrogatories and admissions. *Celotex*, 477 U.S. at 323-24. There

ORDER - 2

is no issue for trial "unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249. Thus, "a scintilla of evidence" in support of the non-moving party's position will be insufficient. *Id.* at 252. Summary judgment is also required against a party who fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual disputes regarding other elements of the claim. *Celotex*, 477 U.S. at 322-23.

Undisputed Facts. Biomet's statement of facts was set out in its Memorandum filed November 2, 2007 (Ct. Rec. 27). Plaintiffs do not dispute the facts nor do they dispute the authenticity of the documents which memorialize their course of dealing. Accordingly, the undisputed facts are as follows:

- February 23, 1979. The parties entered a Distributorship Agreement (hereinafter "Agreement") which gave Plaintiffs the exclusive right to sell Biomet's products in a designated territory. The Agreement provided that Biomet could terminate the agreement if the Plaintiffs fell below 90% of the sales quota and no other distributor of similar longevity had done so. The Agreement also provided for a long term commission program that allowed a distributor to vest in the program after 10 years of continuous service and upon reaching the age of 55. Decl. of Edward J. Boracchia, filed 1/4/08, Ct. Rec. 36-2, Exh. 1.
- June 30, 1995. Biomet sent Plaintiffs a letter terminating the Agreement alleging that Plaintiffs had fallen below 90% of the sales quota and no other distributor of similar longevity had done so.[1] The termination was to be effective July 28, 1995. The letter offered Plaintiffs two options. One was to enter a new agreement and

---

[1]The first sentence of the letter read "I'm writing this letter to notify you that Biomet has elected to terminate the Distributorship Agreement, dated February 23, 1979 as amended, between Edward J. Boracchia & Associates and Biomet ('the Agreement')."

ORDER - 3

the other was to move to an at-will relationship without a written agreement that either party could terminate on 30 days notice. Decl. of Tory Griffin, filed 11/02/07, Ct. Rec. 30, Exh. D.

- July 19, 1995. Mr. Boracchia responded by letter paraphrasing the contents of Biomet's letter related to the termination and the two options he was being offered. He asserted that Biomet had no right to terminate the Agreement and believed that under California law the parties were required to have a written agreement. Decl. of Edward J. Boracchia, filed 1/4/08, Ct. Rec. 36-2, Exh. 3.

- August 9, 1995. Biomet responded saying that the Agreement was terminated on July 31, 1995.[2] Biomet understood that Plaintiffs had rejected the two options offered in the June 30, 1995 letter, but it attached another amended proposal for a new agreement between the parties. Decl. of Edward J. Boracchia, filed 1/4/08, Ct. Rec. 36-2, Exh. 4.

- September 19, 1995. Mr. Boracchia responded by rejecting Biomet's amended proposal for an agreement, but submitted a counter proposal. Decl. of Edward J. Boracchia, filed 1/4/08, Ct. Rec. 36-2, Exh. 5.

- October 12, 1995. Biomet responded by referencing the termination of the Agreement on July 31, 1995, and stating that Mr. Boracchia's counter proposal was unacceptable to Biomet. Decl. of Edward J. Boracchia, filed 1/4/08, Ct. Rec. 36-2, Exh. 6.

- It is undisputed that no new agreement was ever entered between the parties. Biomet believed the parties were working in an at-will relationship, while Plaintiffs believed that the 1979 Agreement was still in effect. A Biomet representation

---

[2] The letter of termination said the effective date of termination was July 28, 1995. Subsequent letters from Biomet said the effective date was July 31, 1995.

ORDER - 4

stated in his deposition that Biomet knew of Plaintiffs' position and that they had agreed to disagree. Dep. of David L. Montgomery, p. 41-42, attached to Decl. of Barbara H. Kramer, filed 1/4/08, Ct. Rec. 36-3.

- November 3, 1997. Biomet wrote a letter to counsel for Plaintiffs related to another lawsuit. Biomet again stated that the Agreement between the parties had been terminated July 31, 1995. The letter noted that it was unlikely that Mr. Boracchia would have submitted a counter proposal if he did not acknowledge the termination of the 1979 Agreement. Decl. of Bradley Tandy, filed 11/2/07, Ct. Rec. 28, Exh. A.

- December 2, 1997. Biomet wrote another letter to counsel for Plaintiffs. The letter states that the parties appear to be in disagreement about the status of the relationship between the parties, but "[i]t is Biomet's position that the Agreement dated February 23, 1979 was terminated and Biomet has been conducting and will continue to conduct its business accordingly." Decl. of Bradley Tandy, filed 11/2/07, Ct. Rec. 28, Exh. B.

- April 30, 2002. Biomet sent a letter informing Plaintiffs of a change in their territory, advising that this was just a notice and not an amendment, since the parties didn't have an agreement. Decl. of Tory Griffin, filed 11/02/07, Ct. Rec. 30, Exh. F.

- May 9, 2006. Biomet hand-delivered a letter to Plaintiffs "terminating its at-will business relationship with you effective June 9, 2006." Decl. of Scott Cureton, filed 11/2/07, Ct. Rec. 29, Exh. A.

- January 11, 2007. Mr. Boracchia sent a letter to Biomet requesting the initiation of the long term commission program "to which I believe I am entitled under the terms of our 1979 agreement." Decl. of Edward J. Boracchia, fled 1/4/08, Ct. Rec 36-2, Exh. 8.

1    Breach of Contract. Plaintiffs allege that Biomet breached the Agreement by failing
2 to make payments to Mr. Boracchia under the long term commission program, by assigning
3 unreasonable sale quotas to the Plaintiffs, and by wrongfully terminating Plaintiffs. Biomet
4 argues that Plaintiffs' claim for breach of contract is barred by the statute of limitations and
5 that the propriety of the termination of the Agreement is not at issue on this Motion.
6    Biomet is an Indiana corporation and Plaintiffs' is a California corporation. The parties
7 agree that the law of the forum state, California, governs on the question of what law should
8 be applied in this diversity case. *389 Orange Street Partners v. Arnold,* 179 F.3d 656, 661
9 (9th Cir. 1999). Under California law, a contract's choice of law provision will identify what
10 state's substantive law, including the statute of limitations, will be applied. *Hambrecht &*
11 *Quist Venture Partners v. American Med. Intl., Inc.,* 38 Cal. App. 4th 1532, 1542 (1995). In
12 briefing, the parties concurred that the Agreement included a choice of law provision that
13 identifies the governing law to be that of Indiana. Plaintiffs took a contrary position at oral
14 argument stating that California law applied to the statute of limitations. Plaintiffs are
15 incorrect however, as Indiana law governs based upon the choice of law provision of the
16 Agreement, although Biomet indicates that the statute of limitations is the same under Indiana
17 or California law.
18    Biomet's Motion asserted, and Plaintiffs did not oppose in their responsive briefing,
19 that the Indiana Uniform Commercial Code ("UCC") governs the Distributorship
20 Agreement. *Monarch Beverage Co., Inc. v. Tyfield Importers, Inc.,* 823 F.2d 1187, 1190
21 (7th Cir. 1987). At oral argument Plaintiffs asserted, without citation to any authority,
22 that the UCC did not apply and that Indiana's 20 year statute of limitations for written
23 contracts prior to 1982 would instead apply citing Indiana Code 34-11-2-11. Plaintiffs new
24 argument is not well taken. The statute of limitations under the UCC for an action for breach
25 of contract is four years after the cause of action has accrued. Indiana Code 26-1-2-725(1).
26 The question is whether the four year statute of limitations began to run in 1995 when

the Agreement was allegedly terminated as Biomet argues, or whether it did not begin to run until Plaintiffs allegedly suffered damages when the relationship was terminated in May 2006, as Plaintiffs argue.

Biomet correctly asserts that both the UCC and case law support its position. First, the plain language of the UCC states that "[a] cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach." Indiana Code 26-1-2-725(2). In this case Mr Boracchia questioned Biomet's right to terminate the Agreement when he first received the termination letter in 1995. This is when the breach occurred. In a factually similar case of *Stutz v. Minnesota Mining Manufacturing Co.,* 947 F. Supp 399 (Indiana 1996) the court applied the four year statute of limitations of Ind. Code § 26-1-2-725(1) holding that the cause of action accrued when the manufacturer terminated a Distribution Agreement.

Plaintiffs cite cases for the general proposition that a person must suffer damages before being able to have a cause of action for breach of contract. Under the law applicable to the UCC context however, a breach of contract cause of action begins to run when the contract is breached, not when damages are sustained. *Bailey v. Skipperliner Industries, Inc.,* 278 F. Supp.2d 945, 964-65 ( N.D. Ind. 2003) (federal case applying Indiana's UCC, Ind. Code 26-1-2-725(1)) citing *Meisenhelder v. Zipp Exp., Inc.,* 788 N.E.2d 924, 928 (Ind. App. 2003). Even under general contract law, it is not required that the full extent of the damages be known but only that some ascertainable damage has occurred. *Del Vecchio v. Conseco, Inc.,* 788 N.E. 2d 446, 449 (Ind. App. 2003). Here, Biomet's termination letter put Mr Boracchia specifically on notice that he would be giving up the long term commission program unless he accepted the new offer by Biomet. His damages were thus actual, appreciable and definite even if the full extent of the damages was unknown. So either under general Indiana contract law or the UCC, the cause of action for breach of contract would run from the date of the termination of the Agreement in 1995.

ORDER - 7

Other cases that support Biomet's position hold that a cause of action accrues when a person becomes aware of facts that support a claim regardless of whether the relationship continues beyond that time. *Parks v. Madison County*, 783 N.E. 2d 711, 719 (Ind. App. 2002); *Crowe, Chizek, and Co.., L.L.P. v. Oil Technology*, 771 N.E.2d 1203, 1210 (Ind. App. 2002). Although the parties continued their relationship here, Mr. Boracchia was clearly aware of facts that would support a claim of breach of contract in 1995. Biomet cites a case on this issue from the Eighth Circuit applying Minnesota law which is not controlling but is persuasive because of the factual similarity with this case. *Enervations, Inc., v. Minnesota Mining and Manufacturing Co.*, 380 F.3d 1066 (8th Cir. 2004). In that case the manufacturer, 3M, also terminated a distributorship agreement. Three M, like Biomet here, offered to negotiate a new contractual relationship and allowed the distributor, Enervations, to function as an authorized 3M distributor during the negotiations but eventually terminated the relationship altogether. The Circuit noted that these facts "do not negate the unambiguous January 1 notice of immediate termination." *Enervations,* 380 F.3d at 1069. Thus, the Circuit affirmed the district court's dismissal without granting leave to amend, because the cause of action arose when the contract was terminated and the case was not filed until after the statute of limitations had run. *Id.* Interestingly, Enervations like Plaintiffs here, also argued that the cause of action did not accrue until the relationship ended because that is when damages would occur, but the argument was rejected with the Circuit stating "[i]t is well-settled that a cause of action for breach of contract accrues immediately on a breach, though actual damages resulting therefrom do not occur until afterwards." *Id.* at 1069 n. 2, quoting *Cargill, Inc. v. Prods Eng'g Co.,* 627 F.Supp. 1492, 1498 (D. Minn. 1986). This case supports a finding that even though the relationship between the parties continues, the statute of limitations will begin to run when the facts supporting the claim are known.

ORDER - 8

In sum then, Biomet unequivocally informed Plaintiffs it was terminating the Agreement on or about June 30, 1995.[3] It is clear from the undisputed correspondence that Mr. Boracchia understood that fact and knew he was being given two options, neither of which were desired by him. In addition, he alleged that the termination was not proper and that the parties might need a written agreement to be in compliance with California law. The parties subsequently attempted to negotiate a new agreement but none was reached. The claim for breach of contract occurred in June 1995 when the facts supporting the claim became known to the Plaintiffs. The claim for breach of contract was not filed until January 31, 2007, more than 4 years after the claim accrued and is therefore not timely. Biomet also correctly points out that even if the claim did not accrue in 1995 it most certainly would have accrued in 1997 when Biomet, in two pieces of correspondence with Plaintiffs' attorneys, advised again that it considered the Agreement to have been terminated in 1995.

Plaintiffs raise a number of other issues arguing that the 1979 Agreement could not be terminated when the distributorship was to remain intact so the termination was a nullity; that Biomet could not unilaterally terminate the Agreement because modification of the Agreement required mutual assent and consideration so the termination was "legally ineffective"; that Biomet's termination was an ineffective attempt to coerce Mr. Boracchia into accepting substantial and unfavorable modifications of the agreement; and that the California Independent Wholesale Representatives Contractual Relations Act required that the parties maintain a written contract. All of the arguments about the propriety of the termination go to the merits of that issue but are irrelevant to the question before the Court, which is whether Plaintiffs timely challenged Biomet's action. Whether the termination was proper or whether

---

[3] At oral argument Plaintiffs for the first time attempted to frame Biomet's termination of the Agreement for cause as an anticipatory repudiation of a contract. The facts do not support Plaintiffs' assertion.

ORDER - 9

Plaintiff could have brought an action for violating the Act are questions that could have been answered if Plaintiffs had filed the breach of contract action and related claims within four years of when that breach occurred in 1995.

Finally, Plaintiffs argue that Mr. Boracchia is entitled to the long term commission program even if Biomet actually terminated the Agreement in 1995. Mr. Boracchia asserts that after he met his 10 year service requirement, his right to long term commissions was triggered only by having reached age 55 and no longer working for Biomet. He reasons that any claim on his long term commission would not have accrued until he reached age 55, was no longer working for Biomet and made a request for payments that was refused. Biomet disagrees, arguing that the termination of the Agreement terminated Mr. Boracchia's right to vest since he hadn't obtained the age of 55 at the time of the termination. When he lost the right to vest his cause of action accrued related to the long term commission program.

Section 9 of the Agreement sets forth the provisions of the Long Term Commission Program. The provisions state: " a. A distributor is "vested" in the "long-term commission program" . . . after ten (10) years of continuous service to Biomet, and after reaching a minimum age of fifty-five (55) years . . . . c. Prior to a "vesting" of the program in the distributor, the distributor has no rights whatsoever." The question presented is whether a person who was terminated after ten years of service but before reaching age 55 could "vest" after being terminated.[4]

---

[4]Plaintiff asserts that one person may have been eligible for the long term commission benefit who reached the age of 55 after he retired. Dep. of David L Montgomery, p. 21, Attached to Decl. of Barbara H. Kramer, filed 1/4/08, Ct. Rec. 36-3. Mr. Montgomery goes on to say however that he can't "recall specifically the circumstances surrounding that, but that may have, may have been the scenario. I d... I just can't recall specifically." *Id*. at p. 22. Even if this did occur, there was no evidence that that person was similarly situated to Mr.

ORDER - 10

Biomet's position is correct on this issue as: 1) the long-term commission program with vesting rights was created exclusively by the Agreement; and 2) the Agreement was terminated before Mr. Boracchia vested. To vest means "to confer ownership of (property) upon a person" or "to give (a person) immediate, fixed right of present or future enjoyment." BLACK'S LAW DICTIONARY, p. 1594 (8th Ed. 1999). When a right has "vested" it is described as "having become a completed, consummated right for present or future enjoyment." *Id.* at 1595. Before vesting occurs then a person has no right to the benefit. That is what the Agreement stated. If Mr. Boracchia had no vested right prior to termination of the Agreement he lost the opportunity to have a vested right altogether when the Agreement was terminated. He could have raised that issue on the merits had he brought a timely breach of contract action.

It is also clear from the termination letter that Mr. Boracchia received notice that the long-term commission program was being lost. Biomet said:

> First, in lieu of termination, we are willing to enter into an Amendment to Distribution Agreement in the enclosed form which leaves several of the more attractive terms intact (such as the long term commission program), but which changes some of the other terms which we believe unduly restrict Biomet's flexibility. If you select this option, you must return the signed Amendment no later than Friday, July 7, 1995.
>
> If you choose not to enter into the Amendment, then the Agreement will be terminated as outlined above and, beginning July 28, 1995, you may continue to serve as an at-will distributor . . . .

Thus, Mr. Boracchia was put on notice that he was losing the right to vest in the long term commission program. If he wished to dispute the loss of that ability to vest as a breach of the Agreement he had 4 years in which to file a claim, but he did not do so.

<u>Violation of CIWRCRA.</u> Plaintiffs' claim for violation of the California Independent Wholesale Representatives Contractual Relations Act of 1990 is based upon Biomet's failure

---

Boracchia, *i.e.* had had his Agreement terminated.

ORDER - 11

to pay long-term commissions under the Agreement. It is undisputed by the parties that the CIWRCRA does not include a limitations period for claims for failure to pay commissions pursuant to a written contract. It is also undisputed that the California Code of Civil Procedure would provide a statute of limitations of 4 years either for breach of a written agreement or under the general statute of limitations. Cal. Code of Civil Pro. §§ 337, 343. As noted previously, any actions related to the long-term commissions program would accrue when the Agreement creating the program was terminated in 1995and Mr. Boracchia lost his ability to vest and receive benefits from the program. As the claim was not filed until 2007, the claim is not timely.

<u>Violation of California Business and Professions Code.</u> Plaintiffs' claim for violation of the California Business and Professions Code § 17200 is also based upon Biomet's failure to pay long-term commissions under the Agreement. It is undisputed that there is a 4 year statute of limitations on actions under this Code. Cal Bus. Prof. Code § 17208. As noted previously, any actions related to the long-term commissions program would accrue when the Agreement creating the program was terminated in 1995and Mr. Boracchia lost his ability to vest and receive future benefits from the program. As the claim was not filed until 2007, the claim is not timely.

### III. CONCLUSION

Biomet's Motion for Summary Judgment, or in the *Alternative for Summary Adjudication of Claims*, must be granted as there are no disputed questions of fact and it is clear from the record that the Agreement between the parties was terminated in 1995. Any claims for breach of that Agreement, or violation of California statutes accrued when Biomet unequivocally advised Plaintiffs in writing that it was terminating the Distribution Agreement. The statute of limitations on all of the claims is four years. Plaintiffs did not file suit until 2007, and thus all of the claims are untimely. It is understandable that Plaintiffs may have wished to continue the relationship with Biomet and did not want to risk filing a suit against

Biomet as that likely would have resulted in the relationship being totally severed. Still, Plaintiffs, cannot sit on their rights and fail to assert claims within the applicable statute of limitations. Accordingly,

**IT IS ORDERED** that:

1. Defendant Biomet's Motion for Summary Judgment, or in the *Alternative for Summary Adjudication of Claims,* filed January 31, 2007, **Ct. Rec. 26 is GRANTED.**

2. The Clerk of Court shall **PREPARE AND ENTER JUDGMENT** consistent with this Order in Defendant's favor against the Plaintiffs.

The Clerk of Court is directed to:

- File this Order;
- Provide copies to counsel of the Order and the Judgment; and
- Close this file.

**DATED** this 25th day of February, 2008.

                                     s/ Wm. Fremming Nielsen
                                     WM. FREMMING NIELSEN
02-19                     SENIOR UNITED STATES DISTRICT JUDGE

ORDER - 13